**CARDEN LIVESAY**
— LTD —
ATTORNEYS AT LAW

Joshua W. Carden, SBN 021698
419 East Juanita Avenue, Suite 103
Mesa, AZ 85204
joshua@cardenlivesay.com
T. (480) 345-9500
F. (480) 345-6559
*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Janet Tannor,<br><br>        Plaintiff,<br><br>v.<br><br>Banner Health,<br><br>        Defendant. | **ORIGINAL COMPLAINT**<br><br>**(JURY TRIAL REQUESTED)** |

Plaintiff Janet Tannor, by and through the undersigned counsel, hereby seeks relief under the Americans with Disabilities Act; and Arizona's Paid Sick Time Law as follows:

**PARTIES**

1. Plaintiff Janet Tannor was at all relevant times herein a resident of Pima County, Arizona, and an "employee" of Banner Health within the meaning and purposes of all relevant statutes at all times material to this action.

2. Defendant Banner Health ("Banner") is an Arizona nonprofit corporation, at all relevant times conducting its business in Pima County, Arizona.

3. Banner was an "employer" of Plaintiff within the meaning and purposes of all relevant statutes at all times material to this action.

4. Defendant employs more than 500 people.

5. At all times pertinent to this Complaint, Defendant's managerial employees were acting within the course and scope of their employment with Defendant; and as a result thereof, Defendant are responsible and liability is imputed for the acts and omissions of their managerial



employees, as alleged herein, under the principles of *respondeat superior*, agency, and/or other applicable law.

6. All acts alleged in this Complaint occurred in Pima County, Arizona.

## JURISDICTION AND VENUE

7. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 & 1343 . Pendent jurisdiction over the related state law claims is invokes pursuant to 28 U.S.C. § 1367.

8. The unlawful employment practices described herein were committed within the State of Arizona, on Defendant' premises located in Pima County, State of Arizona.

9. Accordingly, venue in this Court is proper pursuant to 28 U.S.C. § 1391(b).

## ALLEGATIONS COMMON TO ALL CLAIMS

10. Banner is a large provider of medical services, with multiple locations and many employees throughout Arizona.

11. Banner employed Ms. Tannor beginning January 2006.

12. Ms. Tannor has physical disabilities known to Banner.

13. Ms. Tannor sought and received treatment (except for physical therapy) for her disabilities through Banner facilities and physicians.

14. In 2016, as an accommodation for those disabilities and the many medical appointments needed to care for them, Banner employed Ms. Tannor remotely as an "at-home care" Triage Nurse working night shifts – 5 p.m. to 5 a.m. – Friday, Saturday, and Sunday.

15. In winter 2019, Ms. Tannor left for a pre-planned vacation.

16. Upon her return, she was informed that her shift would be changed to a rotating 16-hour shift.

17. This shift exceeded Ms. Tannor's documented physical limitations and would have interfered with three months of prescheduled medical appointments.

18. She requested an accommodation – with supporting documentation - through Human Resources that she be allowed to retain her existing shift.

19. The reported response from the Director of Operations was "get over it, this is a done deal – we're moving to 16 hours" or words to that effect.



20. Despite Banner's long-term accommodation of her disabilities, Human Resources indicated that they lacked records regarding her previous disability accommodation.

21. In January 2020, they offered her a headset as an accommodation.

22. A headset was not even remotely what Ms. Tannor needed for an accommodation, as it was, *inter alia*, walking, standing, and driving affected by her disability.

23. She reiterated her need for a shift accommodation.

24. Human Resources Director Shelly Vento informed Ms. Tannor that Banner's corporate counsel had directed that Ms. Tannor be reassigned to another position.

25. Banner initially offered Ms. Tannor reassignment to a triage position in Mesa, Arizona, working Monday through Friday, in-person for six months before she would have been permitted to work from home again.

26. This position was physically unworkable, and geographically unworkable as it was over 100 miles from Ms. Tannor's residence.

27. On or about January 22, 2020, Banner took her off the schedule, placed her involuntarily on leave, and required her to return her work phone and work laptop.

28. Banner paid Ms. Tannor her combined earned paid sick time/vacation time initially while she was on leave until it was exhausted.

29. Approximately one week later, Banner replaced Ms. Tannor with a non-disabled individual.

30. On or about January 30, 2020, Ms. Tannor filed her first charge of discrimination with the EEOC.

31. Upon information and belief, shortly thereafter Banner learned of the EEOC charge.

32. Within approximately 30 days, Banner contacted Ms. Tannor again through ADA Coordinator Dorina Stookey and instructed her to start applying for other jobs or be terminated by April 2020.

33. She did so, unhappy to be losing the job that she had been able to work for so many years.

34. As they became available, she applied for seven jobs internally in Banner, working

through Ms. Stookey as the ADA Coordinator.

35. Ms. Stookey would call and say that there was no accommodation possible or that the job was "promotional."

36. In May 2020, Banner hired her temporarily in "Capacity Management."

37. Ms. Stookey had indicated that it would soon be a work from home position.

38. Due to Ms. Tannor's physical limitations, she required transport within the facility as an accommodation just in order to reach the location necessary to perform her duties.

39. Though Banner approved this accommodation in theory, the transportation was never actually available for Ms. Tannor, resulting in employees having to come get her.

40. This happened three times in one week, with employees angry at her unavailability while waiting for Ms. Tannor to be transported to her work location within the facility.

41. After that week, Ms. Stookey finally agreed that this position would not work.

42. Human Resources next approved Ms. Tannor for light duty – for only 60 days in June-July 2020.

43. Even the "light duty" (also Monday through Friday) caused Ms. Tannor to suffer additional exacerbation of her disabilities, requiring additional medical treatment.

44. After light duty expired, Banner ended Ms. Tannor's employment in August 2020.

45. Ms. Tannor's requests for accommodation were reasonable and would not have caused Banner an undue hardship.

46. Upon information and belief, Ms. Tannor was terminated because of her disability, her request for accommodation, her qualification for and potential use of earned paid sick time, her filing of an EEOC charge or any combination of the above.

47. Plaintiff filed her initial charge of discrimination with the EEOC on or about January 30, 2020. A true and correct copy of that charge is attached hereto as Exhibit A.

48. Plaintiff filed a second charge of discrimination with the EEOC on or about October 5, 2020. A true and correct copy of that charge is attached hereto as Exhibit B.

49. On October 28, 2021, the EEOC issued its Notice of Suit Rights on the second charge. A true and correct copy of that notice is attached hereto as Exhibit C.



50. On November 1, 2021, the EEOC issued its Notice of Suit Rights on the first charge. A true and correct copy of that notice is attached hereto as Exhibit D.

51. All conditions precedent to the filing of this lawsuit have occurred or been satisfied.

**FIRST CAUSE OF ACTION – VIOLATION OF ARIZONA PAID SICK TIME LAW**

52. By reference hereto, Plaintiff hereby incorporates the preceding paragraphs.

53. Arizona has adopted a Paid Sick Time law, A.R.S. §§ 23-371, *et seq*.

54. A.R.S. § 23-364(B) states:

No employer or other person shall discriminate or subject any person to retaliation for asserting any claim or right under this article, for assisting any other person in doing so, or for informing any person about their rights. Taking adverse action against a person within ninety days of a person's engaging in the foregoing activities shall raise a presumption that such action was retaliation, which may be rebutted by clear and convincing evidence that such action was taken for other permissible reasons.

55. Defendant violated A.R.S. § 23-364 as described herein, by terminating Plaintiff for use of paid medical leave or anticipated need for such leave.

56. A.R.S. § 23-364(C) authorizes a private right of action for any private party injured by a violation.

57. A.R.S. § 23-364(G) mandates a remedy of an amount "sufficient to compensate the employee and deter future violations, but not less than one hundred fifty dollars for each day that the violation continued or until legal judgment is final."

58. Defendant's discrimination and/or retaliation were committed without justification or excuse.

59. As a direct result of Defendant's conduct, Plaintiff has suffered damages in an amount to be proven at trial, but not less than $150.00 per day until final judgment.

**SECOND CAUSE OF ACTION – ADA DISCRIMINATION**

60. By reference hereto, Plaintiff hereby incorporates the preceding paragraphs.

61. Plaintiff symptoms and physical conditions caused substantial limitation to the



Case 4:22-cv-00040-RCC   Document 1   Filed 01/24/22   Page 6 of 8

performance of major life activities, and/or the perception by Defendant that shey experienced substantial limitations of major life activities.

62. Furthermore, Plaintiff's history of treatment by and prior accommodation at Banner established a track record of her disabilities.

63. Plaintiff placed Defendant on actual notice of her disabilities

64. Defendant failed to reasonably engage in the interactive process; and failed to accommodate Plaintiff, and ultimately terminated Plaintiff.

65. By these actions, Defendant has engaged in direct discrimination against Plaintiff, as well as treating her disparately from other non-disabled workers in violation of the Americans with Disabilities Act, 42, U.S.C. § 12112.

66. As a direct and proximate result of Defendant's conduct, Plaintiff has sustained damages in the form of lost wages and value of benefits. Plaintiff continue to lose the value of such wages and benefits into the future.

67. As a direct and proximate result of Defendant's conduct, Plaintiff has also sustained damages in the form of emotional distress, embarrassment, humiliation, loss of reputation, and loss of self-esteem.

68. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practices unless and until this Court grants relief.

69. Defendant's conduct was malicious, done with reckless indifference, and/or performed with an evil mind so as to entitle Plaintiff to punitive or exemplary damages.

### THIRD CAUSE OF ACTION – ADA RETALIATION

70. By reference hereto, Plaintiff hereby incorporates the preceding paragraphs.

71. Plaintiff engaged in protected activity by requesting accommodations and filing a charge of discrimination with the EEOC.

72. Defendant has retaliated against Plaintiff for engaging in protected activity by taking several adverse actions as described herein in violation of the ADA.

73. But for her protected activities, Plaintiff would not have received these adverse



actions.

74. As a direct and proximate result of Defendant's conduct, Plaintiff has sustained damages in the form of lost wages and value of benefits. Plaintiff continue to lose the value of such wages and benefits into the future.

75. As a direct and proximate result of Defendant's conduct, Plaintiff has also sustained damages in the form of emotional distress, embarrassment, humiliation, loss of reputation, and loss of self-esteem.

76. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practices unless and until this Court grants relief.

77. Defendant's conduct was malicious, done with reckless indifference, and/or performed with an evil mind so as to entitle Plaintiff to punitive or exemplary damages.

## JURY TRIAL DEMANDED

78. Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request that this Court enter judgment as follows:

A. Declaring that the acts and practices complained of herein are in violation of federal and/or state law;

B. Directing Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Plaintiff's employment or employment opportunities;

C. Directing Defendant to place Plaintiff in the position she would have occupied but for Defendant' unlawful actions, and make her whole for all earnings she would have received, including, but not limited to, back pay, front pay, pension, and other lost benefits;

D. Awarding Plaintiff compensatory and punitive damages in an amount to be determined by the jury;

E. Awarding Plaintiff statutory damages in an amount to be determined by enforcement of the statutes herein;



F.  Awarding Plaintiff pre- and post-judgment interest, the costs of this action, and reasonable attorneys' fees as provided by the statutes providing the causes of action cited herein; and

G.  Granting such other and further relief, including equitable relief authorized by the cited statutes, as this Court deems necessary and proper.

Respectfully submitted on this 24th day of January, 2022,

                              CARDEN LIVESAY, LTD.

                              By: s/Joshua W. Carden
                              Joshua W. Carden
                              *Attorneys for Plaintiff*

